PRESCOTT & NORTHWESTERN RAILROAD COMPANY v. FRANKS.

Opinion delivered January 19, 1914.

1. APPEAL AND ERROR—CONFLICTING EVIDENCE.—In an action for damages for personal injuries, where the evidence is conflicting, the verdict of the jury will not be distiurbed on appeal. (Page 87.)

2. EVIDENCE—X-RAY PHOTOGRAPHS—ADMISSIBILITY.—X-Ray photographs are admissible in evidence when proper proof of their accuracy and correctness is produced. (Page 88.)

3. EVIDENCE—X-RAY PHOTOGRAPHS—ADMISSIBILITY.—An X-Ray photograph, showing an injury to plaintiff, is admissible in evidence, when a practicing physician testifies that he was present when the same was taken, and identifies the photograph introduced in evidence as the one taken of plaintiff. (Page 88.)

4. RAILROADS—DUTY TO GIVE WARNING SIGNALS AT CROSSINGS.—Where a railroad company permits the public to cross its tracks at a certain point, it owes the plaintiff a duty to exercise ordinary care not to injure him, when he was crossing the tracks at this point. (Page 90.)

5. RAILROADS—INJURY AT CROSSING—DUTY TO GIVE WARNING SIGNALS.—Where plaintiff was injured by being thrown from his wagon by reason of his horses becoming frightened by the approach of a train at a public crossing; *Held,* under the evidence the jury was warranted in finding that the failure to give the signals required by the statute, was the proximate cause of the injury to plaintiff, and that the giving of such signals would have apprised plaintiff of the approach of the train. (Page 90.)

Appeal from Hempstead Circuit Court; *Jacob M. Carter,* Judge; affirmed.

Appellee instituted this suit against appellant to recover damages for personal injuries which he received while attempting to cross appellant's railroad track at a public crossing at Highland, in Hempstead county, Arkansas. The circumstances under which appellee received his injuries are testified to by himself substantially as follows:

The main line of appellant's line of railway at Highland runs north and south. There is a public road running parallel to the railroad from north to south on the west side of the railroad, and this public road turns and runs square across the railroad from west to east. On the west side of the main line there is a switch which connects with the railroad fifteen or twenty feet south of the crossing, and extends north about 150 yards to a cannery. The dirt road is parallel to this switch, and is about fifteen or twenty feet west of it, and at the crossing where the injury occurred, it turns and extends across both the switch and the main track. The depot is situated between the switch and the main track and from fifty to one hundred feet north of the crossing in question. At the time of the injury, the switch track extending to the cannery was filled with cars, to which was attached an engine standing just north of the crossing. In July, 1912, appellee was engaged in hauling peaches to the cannery, and his work was all on the west side of the railroad. The tires of the wheels of his wagon became loose, and it became necessary for him to carry the wagon to the blacksmith shop at Highland, on the east side of the railroad, to have them shrunk. He drove south on the dirt road parallel with the switch track, and when he got within thirty-five or forty yards of the crossing, he stopped his team to see if there was any train approaching from either way. He did not see or hear any train, and started on across the railroad. The engine attached to the string of cars on the switch track was standing still and made a little noise on account of steam escaping from it. Appellee could not see a train approaching

from the north, because his view in that direction was obstructed by the string of cars on the switch track. Not seeing or hearing any train, he started across the track, and just as his horses placed their forefeet on the switch track in front of the engine standing there, a train came up on the main line from behind the cars on the switch track. This train did not give any signals, and was running toward the south. It was within about twelve feet of appellee before he saw it. When his team saw the approaching train, they surged backward, and then whirled and started to run. Appellee saw that his wagon was about to turn over, and jumped from it. Most of his weight, as he struck the ground, was on one leg, and his hip was knocked out of place and broken. He fainted, and does not know what became of the passing train. He was first treated by a local physician for something like two weeks, and was then carried to Texarkana for treatment at a sanitarium. He was confined to his bed for forty-two days, and suffered great pain. He stated that his team was gentle, and did not ordinarily become frightened at trains. He also says he spent $135 for medical services, resulting from his injury. At the time of the trial, in April, 1913, he stated that he still suffered pain, and that he is not able to follow his vocation, which is that of farming.

Other witnesses for him, who saw the accident, corroborated him in his statement as to how the injury occurred. His attending physician testified that his injuries are permanent, and that the injured limb will always be about an inch and a half shorter than the other, and will be weaker.

Several persons who saw the accident testified for the appellant, and say that appellee's team became frightened before he started across the railroad crossing, and that no engine was approaching on the main line at the time. They state there was a train down at the depot which whistled two or three times, and that this caused appellee's team to jump forward, and then to whirl to one side; that appellee then jumped out of the wagon

and thereby sustained his injuries. They say that appellee's team became frightened at the blasts of the whistle which were given by the train standing at the depot, and that appellee lost control of his team.

The jury returned a verdict in favor of appellee for two thousand dollars, and the case is here on appeal.

*Thos. C. McRae, W. V. Tompkins* and *D. L. McRae,* for appellant.

1. Instruction 2, requested by appellant, should have been given as asked; and the addition of the words, "or near enough to scare them," as was done in instruction 7, which was the same instruction with these words added, was without authority of the statute requiring railroads to give signals at crossings. The court should not add requirements not in the statute. If the engine was not going over the crossing, it was not required to give signals.

2. It was error to admit the radiograph picture in evidence, and to permit a confessedly nonexpert witness to testify with reference thereto, and to give his opinion. A nonexpert witness must state facts, and it is for the jury to draw conclusions therefrom. Jones on Evidence, § 376; *Id.,* § 199; 36 Ark. 17; 91 Ark. 179, 180; 1 Wigmore on Ev., § § 790-792; 73 Ark. 183.

These pictures were not properly verified, they were purely hearsay and were inadmissible. 178 Mass. 59, 86 Am. St. Rep. 464; 104 *Id.* 212; 213 Ill. 220; 152 Mo. 317, 53 S. W. 921.

*W. P. Feazel,* for appellee.

1. The evidence, though conflicting, is legally sufficient to sustain the verdict.

2. If there was any error in giving the seventh instruction with the words added, of which appellant now complains, it is invited error, because the court gave it at appellant's request, and in the form it asked. There was no error in refusing to give instruction 2, and the instruction 7 was much more favorable to appellant than it had any right to ask.

3. There was a sufficient verification of the radiograph pictures to warrant their introduction in evidence. It was for the trial court to determine whether or not a sufficient foundation was laid for the introduction of the photographs. 118 Mass. 420; 44 Am. St. Rep. 373.

It is held that "while a picture produced by an x-ray can not be verified as a true representation of the subject, in the same way that a picture made by a camera can be, yet it should be admitted, if properly taken." 59 N. E. 669. See also 17 Cyc. 420 (d).

HART, J., (after stating the facts). It is first earnestly insisted by counsel for appellant that there is no testimony of a substantial character to support the verdict. They claim that the verdict of the jury has only a scintilla of evidence to support it. Several disinterested witnesses testified in favor of appellant, and stated that they saw the accident. They all say that appellant was injured while about forty feet or more away from the crossing, and that his injuries resulted from his team becoming frightened and running away; that his team became frightened at two short blasts given by an engine standing still at the depot, and that no train was approaching on the main line at the time appellee received his injuries. These witnesses all detail the accident in substantially the same way. Their testimony was reasonable, and consistent, but it can not be said, by any means, to be undisputed. Appellee himself states that his horses had placed their forefeet upon the sidetrack before they became frightened, and that they became frightened by the approach of a train on the main track about twelve feet away from them; that this train approached without warning or signal of any kind, and that he could not see it sooner because his view of the track on the main line north of the crossing was obstructed by the car and engine on the switch track, which extended on up past the depot to the cannery. Appellee states that he stopped his team before starting across the crossing, and looked and listened for trains in both directions before he attempted to cross over; that he did

not see or hear any train approaching, and that no signal was given that any train was about to approach. It is true he does not attempt to account for the passing train, but he does say that after his hip was broken he fainted away. Several other witnesses for him detailed the accident in substantially the same way. They say that no signal or warning was given of the approach of the train, and admit that they do not know what became of it, but do say that as soon as they saw that appellee was injured, they ran at once to him and carried him to a house for treatment, and in this way account for the fact that they did not see the train any more. This presents a conflict in the evidence, which has been settled in favor of appellee by the jury; and under our settled rules of practice, we can not disturb the verdict.

It is next insisted that the court erred in admitting an x-ray photograph, or radiograph, showing the injury done to appellee. Doctor Gosnell, the attending physician of appellee, testified that he had been practicing medicine and surgery for fifteen years. He admitted that he had never had any experience in taking x-ray photographs, but testified that he was present when the photograph was taken; that a glass plate was placed under the injured member of appellee, and the x-ray placed over him, and by the reflection of the light from the x-ray machine, the negative was made, and that he saw it before it was delivered to the photographer to be developed; that the radiograph exhibited to the jury was the same as the impression on the glass which he saw just after it was taken.

It is now a well recognized fact that by the aid of proper apparatus, a picture of the bones of the human body may be obtained that will more or less define the skeleton and show any injuries that may have resulted to the bones, or any foreign substance that may be lodged in the body. Therefore, x-ray photographs are admissible in evidence when proper proof of their accuracy and correctness is produced. *Miller* v. *Mintun*, 73 Ark. 183; *State* v. *Matheson*, 130 Iowa 440, 8 Am. & Eng. Ann.

Cases 430, and case note. Doctor Gosnell, although he was not a graduate of any medical school, was a practicing physician and surgeon, and had been for fifteen years. His testimony, detailed above, shows that he was present when the picture was taken, and was familiar with the anatomy of the human body. Therefore, we think there was sufficient proof of the accuracy and correctness of the photograph, and that the court did not err in admitting it in evidence. The court held that the photographs were erroneously admitted in evidence in the case of *Sellers* v. *State,* 91 Ark. 175, because there was no testimony which showed that they faithfully represented the objects and situations portrayed. But here the testimony of Doctor Gosnell showed that the x-ray photograph was a true representation of the object which was the subject of inquiry.

It is next insisted that the court erred in giving instruction No. 4 at the request of appellee. The instruction is as follows:

"If you find from the evidence that at the time of the injury complained of, and long prior thereto, the defendant company was permitting, and had permitted, the public to use the place on its track where plaintiff was attempting to cross as a crossing, without objection, then plaintiff was not a trespasser in attempting to cross the track at said point, and the defendant and its employees owed him the duty of exercising ordinary care not to injure him while attempting to cross the track at said point."

It is insisted by counsel for appellant that the instruction was calculated to mislead and confuse the minds of the jury in that it might have been construed by the jury to mean that there was a duty devolving on appellant to give other and different warning than the statutory signals, of the approach of the train. We do not agree with counsel in this contention. Appellee predicated his right to recover on the failure of appellants to give the statutory signal required of it of the approach of the train, which appellee says caused his injury, and

all the instructions given by the court show that the case was tried on this theory. If counsel for appellant thought that the instruction complained of was open to the objection they now make, they should have made a specific objection to the court on that account, and doubtless the court would have changed the verbiage of the instruction to cover their objection.

It is next insisted by counsel for appellant that the court erred in refusing to give instruction No. 2, asked by it. The instruction is as follows:

"You are told that the only allegation of negligence in this case is that the train approached the crossing without giving the statutory signals, and that thereby the plaintiff approached so near the crossing that his team became frightened at the train, when, if these signals had been given, he would not have gone so near the track that his team would have become frightened.

"The statute requiring these signals is as follows:

" 'A bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive or engine, and shall be rung or whistled at the distance of at least eighty rods from the place where the said road shall cross any other road or street, and be kept ringing or whistling until it shall have crossed said road or street.'

"From this statute you will see that it is only when the train is about to cross the road or street that these signals are required to be given. So, in this case, the burden is upon the plaintiff to show that the train which he alleges scared his team, approached the crossing without giving the signals. It was not required to give signals if it stopped before it went over the crossing, nor would it be required to keep up the signals while it was standing still. So, if you believe from the evidence that the team became scared at the train while the engine was standing still, or even at the engine while moving, if it stopped before going over the crossing, your verdict should be for the defendant."

Instruction No. 7 is the same as instruction No. 2, except in the next to the last sentence, after the words,

"it was not required to give signals if it stopped before it went over the crossing," is added the words, "or near enough to scare the team." There was no error in adding these words. The statute, copied in the instruction, was first construed by the court in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Hendricks*, 53 Ark. 201, where the court said:

"This statute evidently intends that signals shall be given near public crossings for any purpose which they might naturally or reasonably subserve."

In the present case, the jury was warranted in finding that the failure to give the signals required by the statute was the proximate cause of the injury, and that the giving of the signals would have apprised him of the approach of the train. See *Ark. & La. Ry. Co.* v. *Graves*, 96 Ark. 638. Therefore, the court did not err in refusing to give instruction No. 2, asked for by the appellant.

The judgment will be affirmed.