OXFORD *v.* VILLINES.

5-2121                          334 S. W. 2d 660

Opinion delivered April 25, 1960.

*Virgil D. Willis* and *Eugene W. Moore,* for appellant.

*Walker & Villines;* and *Garvin Fitton* and *Arnold M. Adams,* for appellee.

ED. F. McFADDIN, Associate Justice. This case results from a traffic mishap in the City of Harrison. Appellee, Flora Belle Villines, was a passenger in the taxicab owned by appellant, Swafford, doing business as People's Taxi. The taxicab was then operated by Swafford's agent, Erotha Oxford, a woman. There was a collision between the taxicab and a car driven by Alta Dixon, a man, resulting in property damage and personal injuries. Flora Belle Villines sued Swafford, Oxford, and Dixon, for damages. Dixon denied liability; and cross

complained against Swafford and Oxford for his damages. Swafford and Oxford denied liability to Villines and cross complained against Dixon.

Each driver claimed to be free of negligence, and alleged the other driver to have been guilty of negligence. At the trial, the jury returned a verdict for Villines for $10,000.00 damages; and apportioned the damages, $9,000.00 against Swafford and Oxford, and $1,000.00 against Dixon. No damages were allowed as between Swafford and Oxford on the one side, and Dixon on the other. From the judgment, Swafford and Oxford have appealed against both Villines and Dixon; and Dixon has cross appealed against Swafford and Oxford, and also against Villines.[1] We will refer to Oxford and Swafford as appellants; to Villines as appellee; and to Dixon by name. When the notices of appeal were given, there was a designation of the record and a statement of points relied on, just as provided by the statute. (§ 9 of Act 555 of 1953, as found in § 27-2127.3 Ark. Stats.) Some of the points originally stated by appellants have been abandoned; but there are three that are now urged.

I. *The Jury Finding That Appellants Were Guilty Of 90% Of The Negligence, And Dixon Guilty Of Only 10% Of The Negligence.* The case was submitted to the jury on interrogatories. The jury answered Interrogatory No. 1 affirmatively, finding that Oxford was guilty of negligence in the operation of the taxicab, ". . . and that such negligence contributed to cause, or proximately cause, the collision". The jury answered Interrogatory No. 2 to the effect that Dixon was guilty of negligence in the operation of his automobile, ". . . and that such negligence contributed to cause, or proximately cause, the collision". The Court also submitted this question to the jury:

"Interrogatory No. 3: If your answers to both Interrogatories No. 1 and No. 2 are Yes, then answer this question: Using 100 per cent to represent the total

---

[1] Dixon's cross appeal against Villines was really to protect his rights in the event of a reversal obtained by Oxford and Swafford. What we say in Topic I *infra* disposes of Dixon's claim that he was not negligent.

negligence involved in the collision, what percentage of negligence do you find that each of the defendants, Oxford and Dixon, contributed to cause the collision?''

The jury answered the interrogatory as follows: ''Defendant Oxford 90; Defendant Dixon 10%''. Swafford was liable for the negligence of his agent, Oxford; and the Court rendered judgment, apportioning 90% against Swafford and Oxford, and 10% against Dixon.

Appellants strenuously insist that there is no evidence in the record from which the jury could find that Oxford was guilty of 90% of the negligence. Appellants urge: that the collision occurred at a street intersection in Harrison around 6:45 in the evening in March of 1959; that it was dark enough to require the burning of headlights; that Dixon did not have on his headlights; that Oxford had driven the taxicab almost out of the street intersection, whereas Dixon had only travelled seven feet into the intersection; and that the front of Dixon's car hit the right rear side of the taxicab. Thus, appellants contend that if Oxford was guilty of any negligence, it could not have exceeded 10%; and that Dixon's negligence — if not 100% — was certainly 90%. But all of these matters were questions to be submitted to and decided by the jury. The speed of the Oxford car was disputed; the speed of the Dixon car was disputed; Dixon said Oxford speeded up to get into the intersection in front of him, whereas, he slowed down; it was shown that Dixon had skidded his car several feet in order to try to stop, whereas, Oxford had speeded up the taxi. It was further shown that, after the impact of the cars, Oxford's vehicle dragged Dixon's car several feet before the cars disengaged and the taxicab overturned. Firemen, who went to the scene of the accident, testified that it was not dark enough to have on headlights; and other witnesses disputed such testimony.

In short, there was a bitterly disputed question of fact, between appellants and Dixon, as to which party, if either, was negligent; and in such a dispute we leave it to the jury, who saw the witnesses, heard them testify, and evaluated their testimony, to determine the degree of

the negligence. There was ample testimony to support the verdict, believing some witnesses and disbelieving others, as the jury had a right to do. The jury system is the great bulwark of legal rights. As was very wisely said:

"It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a . . . conclusion. This average judgment thus given it is the great effort of the law to obtain."[2]

II. *The Testimony Of Dr. Breit About The X-ray Films.* In the collision, Oxford, the driver of the taxicab, was injured; and she sued Dixon, the driver of the other vehicle, for personal injuries and other damages. In the course of the trial, Dixon called Dr. Breit to testify about x-ray films of Oxford which Dr. Breit had examined.[3] He sent Oxford to a technician, who took the films, and gave them to Dr. Breit, who was not physically in the room when the x-ray films were taken, but who examined the films and read them, and testified as to his findings from the films.

The objection urged was, that since Dr. Breit was not physically present in the room when the films were taken, he could not testify as to what the films showed. The Court overruled the "hearsay objection", and permitted Dr. Breit to testify. We think the Court committed no error. Dr. Breit testified that he sent the patient to the technician to take the films; that he went to the laboratory where the films were taken, picked up the

---

[2] This is from the case of *Sioux City & Pac. RR. Co.* v. *Stout,* decided by the Supreme Court of the United States on January 26, 1874; 17 Wall. 657, 84 U. S. 657; 21 L. Ed. 745.

[3] No question is raised as to the patient-physician relationship; but it is claimed that Dr. Breit could not testify about the x-ray films because it would be a violation of the hearsay rule: that is the only point.

films, and read them. A logical chain of events was shown: there was no suggestion that anybody had switched films. The jury, as reasonable people, could decide whether the doctor's testimony was worthy of credence. We think that Dr. Breit was sufficiently "present" to constitute a *prima facie* authentication, or verification, of the x-ray films, since no question of identity was raised. In 20 Am. Jur. 615, in discussing the preliminary proof before the admission of x-rays, the rule is stated:

"The sufficiency of the verification of the x-rays is within the discretion of the trial judge . . . It is said that the identification of x-ray plates by the physician or surgeon under whose general direction and for whose use they were made, and by whom they were used in making a diagnosis of the patient's condition, is sufficient to admit them in evidence, although the pictures were not taken or developed in his presence, . . ."

III. *Villines' Instruction No. 1.* This is the strongest contention of the appellants. The instruction[4] told the jury that Swafford, as the owner of the taxicab, owed to the passenger, Villines, *the highest degree of care*; and that Dixon, as the driver of the other vehicle in the mishap, owed to Villines *ordinary care*. There can be no doubt about the correctness of that part of the instruction. In *Black and White Cab Co. v. Doville,* 221 Ark. 66, 251 S. W. 2d 1005, we said:

[4] The instruction, as finally given, reads: "You are instructed that it is not disputed that at the time of the accident here involved the Plaintiff, Flora Belle Villines, was a fare paying passenger in the taxicab of defendant, Swafford, being operated by his agent, Oxford, within the scope of her employment. You are further instructed that in that relation and circumstances that the defendant, Ward Swafford d/b/a People's Taxi Co., owed the duty of exercising the highest degree of care for the safety of its passenger, Flora Villines. Therefore, if you find from a preponderance of the evidence in this case that defendant Swafford, d/b/a People's Taxi Co., through his agent and employee, failed to exercise the highest degree of care for the safety of plaintiff Villines, and that such failure was the sole proximate cause of her injuries, if any; or, if such failure, combined with a concurrent failure of the defendent Dixon to exercise ordinary care, as defined in other instructions, if you so find was the proximate cause of her injuries, if any, then you will find for the plaintiff and against the defendants, Swafford and Dixon, or either of them, in such sum as you find will reasonably compensate her for her damages, if any."

"In *National Fire Ins. Co.* v. *Yellow Cab Co.*, 205 Ark. 953, 171 S. W. 2d 927, we said: 'The weight of authority is to the effect that the standards of care which prevail as to common carriers, generally, apply to those engaging in the business of operating taxicabs. 4 Blashfield, Automobile Law, § 2201, p. 46.' See, also, 37 Am. Jur. 598."

In 37 Am. Jur. 598, the holdings are summarized in this language:

"It has been held, in cases involving the right of a passenger to recover from a taxicab company, that a company of this character, which holds itself out to serve all who apply for transportation for a fixed or agreed fare, is a common carrier of passengers, and as such is bound to exercise that high degree of care for the safety of passengers for hire that is imposed on carriers generally with respect to their passengers, that is, the highest degree of care for the safety of its passengers, consistent with the proper conduct of its business."

The challenged instruction is not a model of rhetoric, but it is not inherently erroneous; and the only objection offered to the instruction was: "It is confusing and will confuse the jury as to the degree of negligence of the defendants". This was nothing more than a general objection. In *Emerson* v. *Stevens Grocer Co.*, 105 Ark. 575, 151 S. W. 1003, there was an objection to an instruction because it was "confusing and misleading to the jury"; and this Court, speaking by Mr. Justice HART, said:

"If instruction numbered 4 was not satisfactory to appellants for the reason that they thought it might be confusing and misleading to the jury, in fairness to the court, they should have specifically pointed out their objections, to it to the end that the court might correct it. If they had done so, doubtless the court would have changed the verbiage of the instruction so as to meet their objection. Having failed to make a specific objection to the instruction, we do not think that the judgment should be reversed for giving it."

This instruction told the jury that if both the taxi-cab operator and Dixon were guilty of negligence, then the jury would so indicate. In another instruction the Court told the jury:

"As tryers of the facts in this case, the following are issues for your determination:

"1. Which, if either, of the defendants, Oxford and Dixon, was guilty of negligence, which caused, concurred in, or contributed to cause the injuries complained of.

"2. The proportion of negligence attributable to each in the event you find more than one party guilty of negligence as a cause of their injuries.

"3. The extent of the damages which each suffered as a result of their injuries, if any, expressed in money values."

When we take this instruction, along with the special interrogatories submitted to the jury, as previously copied, and see the answers that the jury made, we conclude that such answers definitely establish that tthe challenged instruction did not confuse or mislead the jury.

Finding no error, the entire judgment is affirmed and costs taxed against the appellants.