**UNITED STATES of America, Appellee,**

**v.**

**William Lewis GRAY, Appellant.**

**No. 75–1897.**

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1976.

Decided March 18, 1976.

Rehearing Denied April 9, 1976.

---

934

David M. Nissenholtz, Cofman, Nissenholtz & Weinstein, St. Louis, Mo., filed typewritten briefs for appellant.

William Lewis Gray, Leavenworth, pro se.

Donald J. Stohr, U. S. Atty., and Frank A. Bussman, Asst. U. S. Atty., St. Louis, Mo., filed printed brief for appellee.

Before LAY, ROSS and STEPHENSON, Circuit Judges.

PER CURIAM.

William Lewis Gray appeals from his conviction after a trial to the court of causing a forged security to be transported in interstate commerce, in violation of 18 U.S.C. § 2314. On appeal he challenges the sufficiency of the evidence and the admissibility of certain evidence. We affirm.

The evidence at trial showed that on October 31, 1974, a black male cashed a check of the Ogonoski Funeral Home at a National Food Store in St. Louis, Missouri. The check was payable to and on the reverse side carried the endorsement of "William Gray". After photographing the check and the man who presented it with a Regiscope camera, the cashier cashed the check. The check passed through regular bank clearing channels to the Union National Bank of East St. Louis, Illinois, on which it was drawn. The check was dishonored since the Ogonoski Funeral Home account on which it was drawn had been closed five years earlier. Mrs. Frances Ogonoski, whose signature the check purported to carry, testified that she had been owner of the Ogonoski Funeral Home, but the business had closed in 1969. She testified that the check was similar to those used by the business but that she had neither signed nor authorized the signature of this check. An FBI handwriting expert compared the endorsement with several samples of the defendant's handwriting and testified that in his opinion, the defendant had endorsed the check.

Defendant Gray urges that the government failed to prove that he caused the check to be transported interstate since no proof was offered as to how the check passed from the National Food Store in Missouri to the Union National Bank in

Illinois. We disagree. It is well settled that proof of negotiation of a check drawn on an out-of-state bank is sufficient to show that the check was caused to be transported in interstate commerce, since the check will be routed through banking channels to the out-of-state bank on which it is drawn. *See Pereira v. United States,* 347 U.S. 1, 9, 74 S.Ct. 358, 363, 98 L.Ed. 435, 444 (1954); *United States v. Buckles,* 495 F.2d 1377, 1379 (8th Cir. 1974); *Amer v. United States,* 367 F.2d 803, 804 (8th Cir. 1966); *Halfen v. United States,* 324 F.2d 52, 55 (10th Cir. 1963).

Second, defendant contends that there was insufficient proof that he knew the check to be forged when he cashed it. This argument is without merit. Mrs. Ogonoski testified that she was acquainted with the defendant and that from 1967 until 1969, he had telephoned her daily at the funeral home to get obituary information for a local newspaper where he was then employed. She testified that she had seen Gray frequently after she closed the funeral home in 1969 and began working for the Model Cities Agency of East St. Louis. Since defendant's newspaper job required him to contact local funeral homes on a daily basis, the court could properly conclude that in October, 1974 when defendant cashed the check, he knew that the Ogonoski Funeral Home had been closed for years and that the check drawn on its account and dated October 31, 1974, was a forgery.[1]

Defendant complains that the Regiscope photograph taken at the supermarket when the check was cashed was admitted without proper foundation. The photograph in question shows in a single print both the check and the person who presented it. The operation of the Regiscope was described in detail by the supermarket cashier and by the owner of the Regiscope Check Control Company which rented the machine to the store and developed and printed the film. The cashier testified that she had cashed the particular check and had taken the photograph. She admitted that she had no independent recollection of the appearance of the man who presented the check.

The defendant urges that the photograph can be admitted only if the cashier or someone else present when it was taken can testify that it is a fair and accurate representation of William Gray as he appeared when the picture was taken. The cashier's testimony was sufficient to allow the court to find that the photograph was taken when the forged check was passed and that the person pictured was the one who passed it. Under the circumstances, it is for the trier of fact to determine whether the defendant was the man in the photograph. *See United States v. Murray,* 523 F.2d 489, 491 (8th Cir. 1975); *United States v. Wilkins,* 477 F.2d 323, 325 (8th Cir. 1973).

Finally, the defendant contends that there was not sufficient foundation for admission of a fingerprint card from Cook County, Illinois, which displayed what the government claimed was his signature and his photograph. We find that the district court did not err in admitting the Cook County card on the basis of the testimony of the police officer who took those prints. *See United States v. Ranta,* 482 F.2d 1344, 1345–46 (8th Cir. 1973); *Miller v. United States,* 410 F.2d 1290, 1296 (8th Cir.), *cert. denied,* 396 U.S. 830, 90 S.Ct. 81, 24 L.Ed.2d 80 (1969). Even if its admission were error, it would have been harmless since the other evidence of defendant's guilt was overwhelming.[2]

The judgment of conviction is affirmed.

---

1. The defendant filed a supplemental *pro se* brief arguing that there was no evidence that the check was in fact forged. The defendant is mistaken. Mrs. Ogonoski testified that she did not make the check or sign it or authorize anyone else to sign it on her behalf. Transcript at 39. That is sufficient evidence on which to find that the check was forged.

2. The fingerprint card from Cook County was one of three such cards offered by the government as known samples of the defendant's handwriting for comparison with the endorsement on the check. Defendant did not object to admission of the other fingerprint cards. The government's handwriting expert testified that even without the challenged sample, he would still have testified that Gray had endorsed this check by comparing the endorsement to the signatures on the other two cards.