Thelma Marie FISHER *v.* STATE of Arkansas

CA CR 82-90                               643 S.W.2d 571

Court of Appeals of Arkansas
Opinion delivered December 8, 1982

2

*William Randal Wright* of *Graves & Graves,* for appellant.

*Steve Clark,* Atty. Gen., by: *Arnold M. Jochums,* Asst. Atty. Gen., for appellee.

JAMES R. COOPER, Judge. This is a criminal case in which the appellant was charged with theft of property having a value of over $100.00 but less than $2,500.00. After a trial by jury, she was found guilty and sentenced to a term of four years in the Arkansas Department of Correction and a fine of $5,000.00. The trial court suspended imposition of the four year sentence and imposed the $5,000.00 fine. On appeal, the appellant challenges the sufficiency of the evidence, and alleges that the trial court erred in ruling that certain portions of a video tape recording were properly admitted into evidence. We find no merit to either contention, and therefore we affirm.

## THE FACTS

The appellant and her two daughters were employed by M & W Thriftway in Nashville, Arkansas to clean the store. On August 12, 1981, the appellant and her daughters arrived at the store for the purpose of cleaning it. The manager and owner of the store had installed a video tape camera on the premises, prior to the time that the appellant and her daughters arrived. He testified that he adjusted the camera, started it, and then left the building, leaving the camera unattended. He testified that he started the video tape camera at approximately 9:15 p.m. and that he returned at approximately midnight. He testified that he replaced the tape in the camera, since the first tape was about to run out. The manager testified that at approximately 1:30 to 2:00 a.m., he returned to get the tapes. When he arrived at the store, he found law enforcement officers on the scene, and, pursuant

to their instructions, he removed the video tapes. He testified that he had safeguarded those tapes until the time of trial.

The sheriff of Howard County, Dick Wakefield, testified that he observed the appellant's daughters removing groceries in paper sacks from the back door of the store. The sheriff had the individuals arrested. He testified that the appellant indicated that she had left a check for the groceries at the store. He further testified that there was a check on top of the cash register in the amount of $29.64. The officers recovered seven bags of groceries, which the owner of the store testified were valued at $183.29. One of the appellant's daughters testified that she did help sack the groceries and that she intended to return with a check to pay for the balance of the groceries. The appellant testified that she had an agreement with the owner of the store that she could purchase groceries in the manner described above and that she did not intend to steal any groceries from the store.

## THE ADMISSIBILITY OF THE VIDEO TAPE RECORDING

The appellant argues that the trial court erred in permitting in evidence a video tape recording,[1] since no witness testified that the photographic evidence was a fair and accurate representation of the subject matter.

Immediately prior to the trial, the trial court conducted a hearing on the appellant's motion *in limine* which sought to preclude the State from introducing the video tapes. The trial court required the State to present the foundational facts which would support its claim that the video tapes were admissible. The manager of the store, Mr. Moore, testified that he had positioned the video tape camera on a tripod on top of an ice machine, so as to provide a view of the back door. He testified that he loaded the tape into the camera,

---

[1]A video tape recording is an electronic means of recording sound and action on tape for subsequent playback in the form of a sound motion picture. 1 C. Scott, Photographic Evidence § 87 (2d ed. 1969). Video tape recordings are admissible in evidence on the same basis as sound motion picture films. 3 C. Scott, Photographic Evidence § 1294 (2d ed. Supp. 1980).

started it, and checked to make sure that it was operating properly, prior to the time that he left the store. He testified that at the time he left the store, no one else was present in the store. He further testified that he changed the tape approximately two hours later and that he had continuous custody of the tapes, since the date of the alleged theft.

Mr. Moore further testified regarding the contents of the tapes, that the camera worked properly at all times, and that there were no gaps in the tapes. He testified that, when he returned to the store, the camera had not been moved or tampered with in any way, and that fact could be verified, since the tapes would have shown movement had the camera been moved. He testified that in order to turn the camera off or to change the tapes, he had to pass in front of the camera and that his image appeared on the video tapes. He also testified that, once the camera had been turned on, the controls could not be approached, without a picture of that approach being made.

The trial court held that a proper foundation had been presented, and that the video tape was admissible. He found that the video tape fairly represented the situation that existed at the store, and he further noted that any question regarding the tapes went more to their credibility, rather than to admissibility. He noted it was for the jury to determine whether any criminal activity was taking place by virtue of the events which were shown on the video tape. The tape showed appellant and her daughters sacking groceries, and removing them.

The admissibility of photographic evidence is based on two different theories. One theory is the "pictorial testimony" theory. Under this theory, the photographic evidence is merely illustrative of a witness' testimony and it only becomes admissible when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness' personal observation. Obviously, the photographic evidence in this case is not admissible under such a theory, since no person could verify that the video tape accurately represented what occurred at the store, based on personal observation. A second theory

under which photographic evidence may be admissible is the "silent witness" theory. Under that theory, the photographic evidence is a "silent witness' which speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness. *See*, 2 C. Scott, Photographic Evidence § 1021 (2d ed. Supp. 1980); 3 J. Wigmore, Evidence § 790 (Chadbourn rev. 1970).

In Arkansas, photographic evidence is admissible under the "pictorial testimony" theory, when a sponsoring witness testifies that it is a fair and accurate representation of the subject matter. *Martin* v. *State*, 258 Ark. 529, 527 S.W.2d 903 (1975); *Ballew* v. *State*, 246 Ark. 1191, 441 S.W.2d 453 (1969); *Gross* v. *State*, 246 Ark. 909, 440 S.W.2d 543 (1969); *Lillard* v. *State*, 236 Ark. 74, 365 S.W.2d 144 (1963); *Hays* v. *State*, 230 Ark. 731, 324 S.W.2d 520 (1959); *Reaves* v. *State*, 229 Ark. 453, 316 S.W.2d 824 (1958), *cert. denied*, 359 U.S. 944, 79 S. Ct. 723, 3 L.Ed.2d 676 (1959); *Grays* v. *State*, 219 Ark. 367, 242 S.W.2d 701 (1951); *Simmons* v. *State*, 184 Ark. 373, 42 S.W.2d 549 (1931); *Sellers* v. *State*, 93 Ark. 313, 124 S.W. 770 (1910).

The question presented on this appeal has never been answered in Arkansas. A video tape recording and a film produced by an automatic camera have been admitted into evidence in two cases. However, the precise objection made in the case at bar was not raised in either case. *See, French* v. *State*, 271 Ark. 445, 609 S.W.2d 42 (1980); *Lunon* v. *State*, 264 Ark. 188, 569 S.W.2d 663 (1978).

This case presents the question of whether photographic evidence may be admitted as substantive evidence under the "silent witness" theory. We hold that the trial court correctly ruled that the video tape recording was admissible.

The Uniform Rules of Evidence, Rule 901 (a), Ark. Stat. Ann. § 28-1001 (Repl. 1979), provides that authentication is a condition precedent to the admissibility of evidence and that this requirement is met by a showing of evidence sufficient to support a finding that the matter in question is what its proponent claims. Section (b) lists various illustrations, showing methods of authentication or identification.

The Uniform Rules of Evidence, Rule 1001 (2), Ark. Stat. Ann. § 28-1001 (Repl. 1979), provides that "photographs" includes photographs, x-ray films, video tapes, and motion pictures.

X-ray films are admissible in Arkansas, subject to proper authentication. *Oxford* v. *Villines*, 232 Ark. 103, 334 S.W.2d 660 (1960); *Arkansas Amusement Corporation* v. *Ward*, 204 Ark. 130, 161 S.W.2d 178 (1942); *Prescott & N.W.R. Co.* v. *Franks*, 111 Ark. 83, 163 S.W. 180 (1914); *Miller* v. *Minturn*, 73 Ark. 183, 83 S.W. 918 (1904). Obviously, it is impossible for a witness to testify that an x-ray film is a fair and accurate representation of the subject matter, based on that witness' personal observation. Therefore, x-rays could never be admissible under the "pictorial testimony" theory. 3 C. Scott, Photographic Evidence § 1262 (2d ed. 1969). Every jurisdiction admits x-ray films as substantive evidence upon a sufficient showing of authentication, thus utilizing the silent witness theory, even if unintentionally.[2] We note that Rule 1001 (2) treats x-rays, photographs, video tapes, and motion pictures, as one and the same.

Photographic evidence is the best available means of preserving the appearance of a scene at a given time. It is superior to eyewitness testimony in certain respects. Eyewitness testimony is subject to errors in perception, memory lapse, and a witness' problem of adequately expressing what he observed in language so that the trier of fact can understand. *See,* 1 C. Scott, Photographic Evidence § 41-54 (2d ed. 1969). Photographic evidence can observe a scene in detail without interpreting it, preserve the scene in a permanent manner, and transmit its message more clearly than the spoken word.

We hold that photographic evidence is admissible where its authenticity can be sufficiently established in view

---

[2]Some jurisdictions treat x-rays as scientific evidence, and not photographic evidence. *See, Howard* v. *State,* 264 Ind. 275, 342 N.E.2d 604 (1976). Professor Wigmore treats the admissibility of x-rays as scientific evidence, even though admitting that the "silent witness" theory may be a "more satisfactory rationale." 3 J. Wigmore, Evidence § 795 n.1 (Chadbourn rev. 1970).

of the context in which it is sought to be admitted.[3] Obviously, the foundational requirements for the admissibility of photographic evidence under the "silent witness" theory are fundamentally different from the foundational requirements under the "pictorial testimony" theory. It is neither possible nor wise to establish specific foundational requirements for the admissibility of photographic evidence under the "silent witness" theory, since the context in which the photographic evidence was obtained and its intended use at trial will be different in virtually every case. It is enough to say that adequate foundational facts must be presented to the trial court, so that the trial court can determine that the trier of fact can reasonably infer that the subject matter is what its proponent claims. The trial court determines the preliminary questions regarding the admissibility of evidence, and the appellate court reviews those determinations only for an abuse of discretion. Uniform Rules of Evidence, Rule 104 (a) (b), Ark. Stat. Ann. § 28-1001 (Repl. 1979); *Wilson* v. *City of Pine Bluff,* 6 Ark. App. 286, 641 S.W.2d 33 (1982). Our holding in this case in no way affects the admissibility of, or the foundational requirements for, photographic evidence used as demonstrative evidence under the "pictorial testimony" theory.

In adopting the "silent witness" theory, we join the overwhelming majority of other jurisdictions that have decided this issue. *United States* v. *Gordon,* 548 F.2d 743 (8th Cir. 1977); *United States* v. *Gray,* 531 F.2d 933 (8th Cir. 1976), *cert. denied,* 429 U.S. 841, 97 S.Ct. 117, 50 L.Ed.2d 110 (1976); *United States* v. *Stearns,* 550 F.2d 1167 (9th Cir. 1977); *United States* v. *Taylor,* 530 F.2d 639 (5th Cir. 1976), *cert. denied,* 429 U.S. 845, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976); *United States* v. *Pageau,* 526 F. Supp. 1221 (N.D. N.Y. 1981); *Watkins* v. *Reinhart,* 243 Ala. 243, 9 So.2d 113 (1942); *State* v. *Kasold,* 110 Ariz. 558, 521 P.2d 990 (1974); *South Santa Clara Valley Water Conservation Dist.* v. *Johnson,* 231 Cal.App.2d 388, 41 Cal. Rptr. 846 (1965); *People* v. *Bowley,* 59 Cal. 2d

---

[3]Photographic evidence is subject to the same rules as other evidence. Thus, even if photographic evidence is properly authenticated, it may still be excluded because it is not relevant or because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Uniform Rules of Evidence, Rules 401, 402, 403, Ark. Stat. Ann. § 28-1001 (Repl. 1979).

855, 382 P.2d 591, 31 Cal. Rptr. 471 (1963); *People* v. Doggett, 83 Cal.App.2d 405, 188 P.2d 792 (1948); *Oja* v. *State,* 292 So.2d 71 (Fla. App. 1974); *Franklin* v. *State,* 69 Ga. 36, 47 Am. Rep. 748 (1882); *Bergner* v. *State,* 397 N.E.2d 1012 (Ind. App. 1979); *State* v. *Holderness,* 293 N.W.2d 226 (Iowa 1980); *Cook* v. *Clark,* 186 N.W.2d 645 (Iowa 1971); *State* v. *Thompson,* 254 Iowa 331, 117 N.W.2d 514 (1962); *Franzen* v. *Dimock,* 251 Iowa 742, 101 N.W.2d 4 (1960); *Perry* v. *Eblen,* 250 Iowa 1338, 98 N.W.2d 832 (1959); *Foreman* v. *Heinz,* 185 kan. 715, 347 P.2d 451 (1959); *Litton* v. *Commonwealth,* 597 S.W.2d 616 (Ky. 1980); *State* v. *Young,* 303 A.2d 113 (Me. 1973); *Sisk* v. *State,* 236 Md. 589, 204 A.2d 684 (1964); *Hartley* v. *A. I. Rodd Lumber Co.,* 282 Mich. 652, 276 N.W. 712 (1937); *Hancock* v. *State,* 209 Miss. 523, 47 So.2d 833 (1950); *State* v. *Withers,* 347 S.W.2d 146 (Mo. 1961); *Vaca* v. *State,* 150 Neb. 516, 34 N.W.2d 873 (1948); *King* v. *State,* 108 Neb. 428, 187 N.W. 934 (1922); *People* v. *Byrnes,* 33 N.Y.2d 343, 308 N.E.2d 435, 352 N.Y.S.2d 913 (1974); *State* v. *Hunt,* 297 N.C. 447, 255 S.E.2d 182 (1979); *Dunford* v. *State,* 614 P.2d 1115 (Okla. Crim. App. 1980); *State* v. *Brown,* 4 Or. App. 219, 475 P.2d 973 (1970); *State* v. *Goyet,* 120 Vt. 12, 132 A.2d 623 (1957); *Ferguson* v. *Commonwealth,* 212 Va. 745, 187 S.E.2d 189 (1972), *cert. denied,* 409 U.S. 861, 93 S. Ct. 150, 34 L.Ed.2d 108 (1972), *reh. denied,* 409 U.S. 1050, 93 S.Ct. 533, 34 L.Ed.2d 504; *State* v. *Dunn,* 246 S.E.2d 245 (W. Va. 1978); *But see, Casson* v. *Nash,* 54 Ill.App.3d 783, 370 N.E.2d 564, 12 Ill. Dec. 760 (1977); *Foster* v. *Bilbruck,* 20 Ill. App. 2d173, 155 N.E.2d 366 (1959).

## THE SUFFICIENCY OF THE EVIDENCE

The appellant concedes that the State proved the value of all of the groceries, but she alleges that since it was not proven that the value of the items which the appellant herself removed exceeded $100.00, then she can only be convicted of a misdemeanor. We disagree. The jury could certainly have found that all three women committed the theft. Under the Arkansas Criminal Code, the appellant could be found guilty by virtue of the conduct of others with whom she was acting in concert, as well as her own actions. Ark. Stat. Ann. § 41-301 *et seq.* (Repl. 1977); *King* v. *State,*

271 Ark. 417, 609 S.W.2d 32 (1980). The record supports the jury's finding that the appellant took all the articles from the grocery store, and that the articles had a value in excess of $100.00, but less than $2,500.00.

The appellant argues that the jury had to speculate to find that appellant actually stole all the articles, but we disagree with that contention. The explanation offered by the appellant and her daughters was for the jury to weigh, and the jury obviously did not believe appellant's explanation. There is substantial evidence to prove theft of property.

Affirmed.