[Cite as *State v. Baker*, 2016-Ohio-3471.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-224 |
| v. | : | (C.P.C. No. 13CR-1663) |
| Larry Baker, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 16, 2016

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

**On brief:** *Clark Law Office* and *Toki M. Clark*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Larry Baker, appeals from a judgment of the Franklin County Court of Common Pleas entered on February 25, 2015, which sentenced him to a two-year term of imprisonment on a single count of burglary following a guilty verdict in a trial by jury. Specifically, Baker challenges the authenticity of a video used against him as well as the sufficiency and weight of the evidence against him. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On Monday, September 24, 2012, a pastor with the Rock City Church was in the church offices at 950 Michigan Avenue in Columbus, Ohio preparing to deposit the collection money obtained on the preceding Sunday. He opened the safe in his office, removed packets of checks, other donation receipts from online sources, and an envelope of cash. The cash envelope was clearly marked "cash" and had the amount listed on the outside, approximately $1200. (Tr. Vol. II at 39.)

No. 15AP-224

{¶ 3}  After placing the envelopes on his desk, the pastor left his office briefly to use the restroom down the hall from his office. On the way back, he spoke briefly with the only other person working in the building that day, the church's youth pastor.  In total, he was away from his office for approximately five minutes.  When he returned to his office the cash envelope was gone.

{¶ 4}  Initially believing he had merely misplaced the envelope or misremembered ever having it, he investigated by contacting members of the church who took and counted the collection in order to confirm that indeed there had been a cash envelope. However, after he exhausted those avenues, he contacted Integrated Building Systems ("IBS") (the landlord from which the church rented the office space) to determine if the building had security camera records.  IBS did have a security camera system and one of the cameras captured activity in the hallway in the area of the route between an outside entry door and the doorway of the pastor's office.

{¶ 5}  The pastor contacted the police and either on the day of the theft, September 24, 2012, or the day after, a Columbus police officer arrived at the scene and reviewed the video with the pastor that had been captured by IBS' system.  The pastor fast forwarded and rewound through the video with the police officer until they found a segment of video that showed some activity.  The pastor requested from IBS a copy of the video segment showing activity.  Employees of IBS made a copy and gave it to the pastor who, in turn, delivered it into the hands of the police.

{¶ 6}  The video, which was ultimately introduced into evidence and played at trial, is in the record before this Court, and we have reviewed it.  It shows a man (whom the jury ultimately determined was Baker) entering the building and slowly ambling from doorway to doorway looking inside each room.  From viewing the video, he is dressed in a shirt and tie, has a messenger bag slung across his chest, and appears to be clutching some papers.  When he enters the pastor's office, there is a longer period in which he is not visible than when he looked in any of the other doorways.  After this period, he sticks his head out and carefully looks both directions up and down the hall before pulling his head back into the office.  Seconds later, he exits the office with some envelopes or papers in his grasp.  He pauses briefly to look over his shoulder and then lopes, with soft

exaggerated jogging strides, down the hall and out the outer door of the church offices, both opening and closing the door slowly.

{¶ 7} The pastor did not know who the man was, but he said that, despite the fact that the church offices are not open to the public or advertised by signs, he had entered the church offices once before, approximately three to six months prior to the day of the theft. On that occasion, when confronted by staff, he told them he was collecting for some charity or organization, gave the church staff a pamphlet, and left. Despite the fact that the pastor did not know Baker's identity, by a method not reflected in the record, the police came to suspect that Baker was the man shown in the video. Thus, in December 2012, a Columbus police detective went to speak to Baker. He showed Baker photographic stills taken from the video. Baker admitted the photographs looked like him but did not admit that they were he and did not admit to having been in the Rock City Church offices. Baker related that he goes to a great number of places, to pass out resumes and flyers seeking donations for the homeless.

{¶ 8} A Franklin County Grand Jury indicted Baker on March 26, 2013 for a single count of burglary. Apparently because of a service delay, Baker was not arraigned until August 1, 2014, when he pled not guilty. On January 26, 2015, a jury trial in the case began. The facts related above were introduced into evidence during that trial, and on January 29, 2015, the jury found Baker guilty. On February 25, 2015, the trial court sentenced Baker to serve two years in prison.

{¶ 9} Baker now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 10} Baker presents four assignments of error for review:

> [1.] THE VERDICT OF GUILTY IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.
>
> [2.] THE CONVICTION OF APPELLANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> [3.] THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT'S MOTIONS FOR ACQUITTAL.
>
> [4.] THE TRIAL COURT ERRED IN FAILING TO EXCLUDE MODIFIED VIDEO EVIDENCE THAT WAS NOT AUTHENTICATED.

No. 15AP-224

For clarity of analysis, we address the assignments of error out of order.

## III.   DISCUSSION

### A. Fourth Assignment of Error–Whether the Trial Court Erred in Failing to Exclude the Surveillance Video

{¶ 11} Baker argues that the surveillance video introduced into evidence against him was not properly authenticated, that there was evidence that the time stamp on it could have been tampered with, and that it was "whittled down" from a much lengthier video. (Baker's Brief at 11.)

{¶ 12} There is no evidence that the time stamp on the video was or could have been tampered with.  Indeed, the IBS witness who testified about the security system expressly testified that, although the recorder occasionally is off by a few minutes and needs to be adjusted, once a video is recorded, the time stamp is part of the video, and there is no way, short of "TV show land" style editing to change the date and time. (Tr. Vol. II at 145.)

{¶ 13} While witnesses testified that security cameras record a great deal of footage of which this excerpt was only one small part, no witnesses testified that the surrounding footage held any relevance at all to this case.  The officer who reviewed the video with the pastor testified that the two of them were "fast forwarding and rewinding through the video to make sure [they] got everything" and "the segment that I - - contained [Baker] on it was, maybe, a couple of minutes.  No longer than that." (Tr. Vol. II at 153.)  In the absence of some reason to suspect that other parts of the video were potentially relevant, we find no evidence in the record to support that any other portion of the video footage available holds any importance as to whether or not the excerpt shown to the jury is admissible.

{¶ 14} Authenticity is a condition precedent to admissibility but can be "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A).  In a classic case of photographic authentication, the person who took the photographs or videos would testify as to how and when they were taken and that they show what they purport to show. *See, e.g.*, *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, ¶ 150.  However, in some contexts (including security cameras), the Supreme Court of Ohio has embraced the " ' "silent witness" theory. Under that theory, the photographic evidence is a "silent witness" which speaks for itself, and is

substantive evidence of what it portrays independent of a sponsoring witness.' " *Id.*, quoting *Midland Steel Products Co. v. Internatl. Union, United Auto., Aerospace & Agriculture Implement Workers, Local 486*, 61 Ohio St.3d 121, 129-30 (1991), quoting *Fisher v. State*, 7 Ark.App. 1, 5-6 (1982). In other words, when a witness can testify about the reliability of the recording system, including, for example, the positioning of the cameras and the method of recording and producing the video, the video will be considered properly authenticated in the absence of some countervailing reason to believe that the video is defective or has been altered in some respect. *Id.* at ¶ 151-52.

{¶ 15} In this case, a representative of IBS testified about the positioning of the cameras, how they were activated, how they recorded, and how the excerpt was created for the pastor in this case. In addition, a police officer who was present when the excerpt was selected by fast forwarding and rewinding in order to ascertain the boundaries of the potentially relevant footage, testified briefly about that process. In the absence of countervailing evidence or reasons to believe that this video is anything other than what it purports to be, the testimony by the IBS witness and the officer was sufficient to establish the authenticity of the video recording.

{¶ 16} Baker's fourth assignment of error is overruled.

**B. First, Second, and Third Assignments of Error—Whether Baker's Conviction was Against the Manifest Weight of the Evidence, Whether it was Supported by Sufficient Evidence, and Whether a Rule 29 Motion for Acquittal Should Have Been Granted**

{¶ 17} In his first assignment of error, Baker alleges that his convictions were not supported by sufficient evidence. Sufficiency is:

> "[A] term of art meaning that legal standard which is applied
> to determine whether the case may go to the jury or whether
> the evidence is legally sufficient to support the jury verdict as
> a matter of law." * * * In essence, sufficiency is a test of
> adequacy. Whether the evidence is legally sufficient to sustain
> a verdict is a question of law.

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *Black's Law Dictionary* 1594 (6th Ed.1990). "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v.*

No. 15AP-224

*Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 18} Although Baker's third assignment of error challenges the denial of his motion for acquittal, this does not necessitate a separate review because "[a] motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37, citing *State v. Carter*, 72 Ohio St.3d 545, 553 (1995); *Thompkins* at 386.

{¶ 19} Baker's second assignment of error challenges the manifest weight of the evidence. The Supreme Court has "carefully distinguished the terms 'sufficiency' and 'weight' * * *, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.' " *Eastley* at ¶ 10, quoting *Thompkins* at paragraph two of the syllabus.

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."

(Emphasis deleted.) *Id.* at ¶ 12, quoting *Thompkins* at 387; *Black's* at 1594. In manifest weight analysis, "the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." *Thompkins* at 388, quoting *Tibbs v. Fla.*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). However, even though manifest weight is a different standard from sufficiency, because the evidence against Baker in this case was overwhelming and does not come close to failing either measure of sufficiency or weight, we find it effective to analyze these assignments of error together.

No. 15AP-224

{¶ 20} The Ohio Revised Code defines the offense of burglary, in part, applicable to this case as follows:

> (A) No person, by force, stealth, or deception, shall do any of the following:
>
> (1) Trespass in an occupied structure * * * when another person * * * is present, with purpose to commit in the structure * * * any criminal offense.

R.C. 2911.12(A)(1).

> (C) "Occupied structure" means any * * * building * * * to which any of the following applies:
>
> * * *
>
> (4) At the time, any person is present * * * in it.

R.C. 2909.01(C)(4). "Trespass," as used in R.C. 2911.12(A)(1) and as relevant to this case, is to "[k]nowingly enter or remain on the land or premises of another," "without privilege to do so." R.C. 2911.21(A)(1); *see also,* R.C. 2911.10 (providing that for purposes of R.C. 2911.11 to R.C. 2911.13 "the element of trespass refers to a violation of section 2911.21 of the Revised Code").

{¶ 21} Baker argues that his conduct as shown by the evidence does not meet these elements because when he entered the building he had no intent to commit a crime and could not have known that, only moments before Baker wandered in, the pastor had taken money from the safe and left it unattended on his desk while he went to the restroom. Baker therefore urges us to find that this was a "theft of opportunity" and not burglary. (Baker's Brief at 5.) However, although burglary can be committed by entering an occupied structure by force, stealth, or deception with the already-fully-formed purpose to commit a criminal offense, Baker fails to note that the crime of burglary occurs upon a "trespass" in an occupied structure. R.C. 2911.12(A)(1). "Trespass" is a concept that includes more than just the moment when one enters a forbidden area, but also knowingly "remain[ing] on the land or premises of another" without privilege to do so. R.C. 2911.21(A)(1); R.C. 2911.12(A)(1). Once Baker saw the money, as even his brief does not dispute, he formed the intent to steal it, and he remained in the church's office (where he had no privilege to be) in order to steal the money and then escape. The video clearly reflects that he was stealthy in his exit, peering around corners, exiting with exaggerated

No. 15AP-224

gentle strides, and carefully opening and closing the door to the outside, making his exit silent. In short, Baker's readily apparent attempts at stealth helped him to evade the hearing of the persons present in the building and to thereby "remain" and "trespass" on the premises long enough to steal the money and escape with it. This is burglary. "While the term, 'stealth,' is not defined in the Revised Code, this court has defined that term to include 'any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.' " *State v. McBride*, 10th Dist. No. 10AP-585, 2011-Ohio-1490, ¶ 23, quoting *State v. Lane*, 50 Ohio App.2d 41, 47 (1976); *State v. Wallace*, 10th Dist. No. 08AP-2, 2008-Ohio-5260, ¶ 43. The video in this case and the testimony of the witnesses are sufficient evidence, when viewed " 'in a light most favorable to the prosecution, [to have permitted] a[] rational trier of fact [to] have found the essential elements of the crime proven beyond a reasonable doubt.' " *Monroe* at ¶ 47, quoting *Jenks* at paragraph two of the syllabus.

{¶ 22} In addition, it could not be clearer from the video exactly what Baker is doing when he peers around the corner, eyebrows raised and mouth agape to check for potential witnesses, before striding with exaggerated care down the hall to softly open and close the door in making his escape. Even his own defense counsel at trial characterized Baker's stealthy behavior as "cartoonish." (Tr. Vol. II at 189.) We have no difficulty concluding that this conviction is also not against the manifest weight of the evidence.

{¶ 23} Accordingly, we overrule Baker's first, second, and third assignments of error.

## IV. CONCLUSION

{¶ 24} Having overruled all four of Baker's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and KLATT, JJ., concur.

_____