**JOHNSON'S ISLAND CLUB, INC., n.k.a. Johnson's Island Property Owners Association, Appellant,**

v.

**BAYCLIFFS CORPORATION, Successor to Johnson's Island, Inc., Appellee.**

[Cite as *Johnson's Island Club, Inc. v. Baycliffs Corp.* (1992), 82 Ohio App.3d 140.]

Court of Appeals of Ohio,
Ottawa County.

No. 91–OT–045.

Decided Aug. 28, 1992.

*John R. Jewitt, Jr.,* for appellant.

*John D. Brown, Robert A. Brindza* and *John A. Kocher,* for appellee.

SHERCK, Judge.

This is an appeal from an order of the Ottawa County Court of Common Pleas that defined the parameters of a previously issued permanent injunc-

tion. Because we find the trial court properly determined that blasting to construct a lagoon was not enjoined by a 1977 injunction that prohibited "quarrying," we affirm.

Appellant is Johnson's Island Club, Inc., now known as "Johnson's Island Property Owners Association." Substituted appellee is Baycliffs Corporation, successor in interest to Johnson's Island, Inc.[1]

Johnson's Island is situated on Sandusky Bay off the southern coast of the Marblehead Peninsula near Lake Erie in Ottawa County. During the Civil War, the Union Army used the island to house Confederate prisoners of war. A cemetery containing the remains of Confederate soldiers who died during imprisonment is still maintained there.

In the latter part of the Nineteenth Century, limestone quarrying began on the island. By 1956, the quarry, covering approximately twenty of the island's three hundred acres, had fallen into disuse. That year the entire island, with the exception of the Confederate cemetery, was purchased by appellee's predecessor, Johnson's Island, Inc.

The following year, Johnson's Island, Inc. filed a plat which divided the island into building lots and dedicated two roadways: Memorial Shore Drive and Confederate Drive. Memorial Shore Drive was reserved for use by the developer and future purchasers of building lots. Confederate Drive, which provided access to the Confederate cemetery, was to be dedicated to public use. Both roadways were completed; they are connecting and encircle the island. In 1968, a causeway was built between the island and the Marblehead mainland.

Johnson's Island and Marblehead are part of Danbury Township. The township enacted zoning in 1975. All of Johnson's Island was zoned "R–3," "High Density Residential." Even though "R–3" zoning prohibits quarrying, in 1977 Johnson's Island, Inc., along with two other joint venturers, restarted quarry operations in order to fulfill a contract with the U.S. Army Corp of Engineers. Johnson's Island, Inc. had contracted with the Army Corp to provide a large quantity of limestone for the construction of a breakwall in Cleveland's harbor.

On May 11, 1977, appellant brought suit seeking to enjoin the quarrying. Appellant sought relief on four grounds: (1) violation of Danbury Township zoning; (2) violation of land use restrictions; (3) violation of appellee's

---

1. The plaintiffs in the original 1977 action were Johnson's Island Club, Inc., now known as "Johnson's Island Property Owners Association," and Harry Thompson, Jr. The 1977 defendants were Johnson's Island, Inc., of which Baycliffs Corp. is successor, Peter Kiewit & Sons, and Glawe, Inc. Thompson, Peter Kiewit & Sons, and Glawe, Inc. are not involved in the present matter. The caption has been amended to reflect this.

contractual rights arising out of the sale of lots to appellee members; and (4) creation of a nuisance condition. Following four days of hearings, the trial court declined to accept Johnson's Island, Inc.'s argument that quarrying was a nonconforming use and issued a permanent injunction prohibiting:

"1. Drilling and blasting by the use of any explosive for the purpose of quarrying stone from the existing quarry site.

"2. The use of any quarrying equipment for the purpose of quarrying stone.

"3. Any other activity incidental to a quarrying operation which violates the Danbury Township Zoning Resolution except that the loose stone in the quarry pit may be removed by Defendants or any one of them for such purpose as they deem appropriate."

The trial court based its decision solely on appellee's violation of township zoning regulations. The trial court specifically declined to decide the merits of appellant's three other grounds for relief.[2]

In 1990, appellee devised a new use for the quarry on Johnson's Island and sought guidance from the trial court. Appellee proposed to cut a channel between the quarry and Sandusky Bay, allowing the quarry to be filled with water. Appellee then planned to sell lots on the perimeter of this newly created lagoon. However, in order to make the lagoon navigable to boats, the floor of the quarry would have to be lowered and leveled by removing between two and six feet of limestone. This process, as well as the creation of the channel connecting the lagoon with the bay waters, would require the removal of limestone by blasting. Appellee asked the trial court to determine whether this construction blasting is an activity prohibited by the 1977 injunction.

The trial court ordered a hearing on appellee's request. During that hearing, the court permitted the admission of evidence on a broad range of issues. Appellee presented testimony by Dr. C.E. Herdendorf, an expert limnologist and geologist, who stated that based on his studies he believes the water supply of Johnson's Island is infiltrated lake water. As a result of this conclusion, Dr. Herdendorf believes the lowering of the quarry's floor would have no adverse effects on either the quantity or quality of extant wells on the island. Dr. Herdendorf, who is also an editor of a dictionary of geological terms, testified that whether an activity constituted "quarrying" depended on

---

2. This decision was affirmed by this court and certification was denied by the Ohio Supreme Court. Appellee later unsuccessfully attempted to have the Danbury Township Zoning Regulations declared unconstitutional. See *Johnson's Island, Inc. v. Bd. of Trustees of Danbury Twp.* (1982), 69 Ohio St.2d 241, 23 O.O.3d 243, 431 N.E.2d 672.

the purpose of that activity. According to Dr. Herdendorf, " * * * the difference is whether or not you are quarrying to obtain the material commercially or to build a hole. When your purpose is to create a hole, that is excavation. When you are trying to extract the stone for some commercial value [that is quarrying]." Appellee also called a blasting expert and an expert on seismology. Both testified that the blasting necessary to excavate the quarry and cut a channel to the bay would not disturb any structures on the island including existing wells.

Appellant did not call any experts to refute the testimony of appellee's experts. Instead, appellant presented testimony from three Johnson's Island residents who reported difficulties with their wells that occurred following previous blasting. On rebuttal, appellee's expert, Dr. Herdendorf, testified that given the location of the previous blasting in relationship to the wells in question, it was inconceivable to him that blasting caused the problems.

Appellant also introduced documents showing that the original plat dedicated Memorial Drive and Confederate Drive for its use. Appellant argued that connecting the quarry to the lake required cutting these roads, thus interfering with appellant's travel rights. One island resident testified that frequently in winter the northeast portion of the island becomes impassable because of large snow drifts. As a result, the southern part of the drive becomes the only available exit.

The matter was submitted to the court, which then issued findings of fact and conclusions of law. The court concluded that the 1977 permanent injunction was granted because quarrying violated the zoning code. The court went on to find that appellee's proposed excavation was not violative of zoning regulations. Therefore, "[appellee is] not prohibited by the 1977 order from safe and reasonable use of explosives for excavation in the construction of * * * residential housing * * * planned for the quarry area and the channel cut from Lake Erie to the quarry on Johnson's Island."

It is from this judgment that this appeal arises. Appellant puts forth the following assignments of error:

"Assignment of Error No. 1

"The court failed to find from the evidence that the use of explosives to remove rock for various uses in the construction of defendant's subdivision and dock constitute quarrying within the proscription of the present injunction.

"Assignment of Error No. 2

"The court erred in failing to give consideration to the elimination of the easement rights in the private island roadway, Memorial Shoreway Drive, by the use of explosives to cut said roadway to construct a boat channel.

"Assignment of Error No. 3

"The court failed to consider the effect of the use of explosives upon the quantity and quality of the well water supply for the entire island where the quantity of water is marginal and previous blasting had produced disruption in water supplies of the island residents.

"Assignment of Error No. 4

"The present land developer stands in the shoes of the original developer and is not entitled to be relieved from the prohibition against blasting under the clean hands doctrine when the evidence shows damage from earlier blasting and shows that failure of the developer to install a promised central water system and other material broken promises in the sale of lots within the subdivision."

I

█ Appellant asserts in its first assignment of error that appellee's proposed blasting to lower the level of the Johnson's Island quarry constitutes "quarrying" and is prohibited by the 1977 injunction. In support of this proposition, appellant points to the testimony of Danbury Township Trustee Neil Merckens. Merkens, now a printer, once worked in a quarry and testified that " 'quarrying * * * is the drilling of holes into solid limestone rock * * *, placing charges of dynamite in those holes, blowing the rock, large chunks into small chunks and hauling them out of the quarry pit."

In further support of its position, appellant cites the definition provided by appellee's expert geologist, who stated that the difference between "quarrying" and "excavation" was that the purpose of the former was to "obtain the material commercially" while the latter was "to build a hole." Appellant asserts that the rock generated from reducing the quarry floor was intended to be used for a breakwall in Sandusky Bay near the island and applied to roads on the island. These improvements, appellant argues, will increase the value of lots on the island. Since these lots are to be sold in commerce, one of. the purposes of the blasting, therefore, would be to obtain "material commercially" and as such would constitute "quarrying" within the definition provided by appellee's expert geologist.

█ The pivotal question in this case is the meaning of the word "quarrying" as it is used in the 1977 injunction. It is an axiomatic rule of construction that common words appearing in a written instrument are to be given their plain and ordinary meaning. *Alexander v. Buckeye Pipeline Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, at paragraph two of the syllabus. "Quarrying" is defined as "the business, occupation, or act of

extracting useful material (as building stone) from quarries[.]" Websters New Collegiate Dictionary (9 Ed.1990) 965. A "quarry" is "an open excavation usu. for obtaining building stone, slate, or limestone[.]" *Id.* By contrast, "to excavate" means "to form a cavity or hole in[.]" *Id.* at 431. Thus, in common usage, the emphasis in "quarrying" is on the material extracted, while the emphasis in "excavation" is on the hole created. We note that the common use of these words corresponds with the testimony given by appellee's expert geologist. We also note, following a thorough review of the record of the 1977 proceedings, that this definition is in harmony with the testimony of islanders who at that time did not complain of blasting in the quarry until it was learned that the product of that blasting was to be sold for a profit, instead of being used to improve the island. It would seem that back in 1977 even appellant differentiated in its characterization of the activity on the basis of its purpose.

With respect to appellant's alternate argument that the use of the rock removed from the quarry is still indirectly commercial, we simply find the contention far too tenuous a thread to support appellant's conclusion. Clearly, the principal purpose for excavation is to make a hole. We find no merit in appellant's complaint that appellee will use the material removed from the excavation for the benefit of the island.

Accordingly, we find that the trial court properly ruled that the excavation appellee proposes is not within those activities proscribed by the 1977 injunction. Appellant's first assignment of error is not well taken.

## II

Appellant, in its second assignment of error, asserts that the trial court erred by failing to consider appellant's easement rights in the island roadways. Appellant argues that the construction of a channel between the quarry and the bay would cut through Memorial Drive upon which appellant has a right of way by virtue of a dedication contained in the original recorded plat.

However, the issue of easement infringement was not properly before the trial court. The original 1977 complaint, which generated the injunction at issue, made no mention of an easement. There is no pleading of record from appellant that raises the easement issue during the hearing on clarification. Accordingly, the trial court did not err when it chose not to rule upon the question of appellee's plans interfering with its easement. See *State ex rel. Evans v. Bainbridge Twp. Trustees* (1983), 5 Ohio St.3d 41, 5 OBR 99, 448 N.E.2d 1159. Appellant's second assignment of error is not well taken.

## III

Appellant's third assignment of error asserts that the trial court failed to consider the effect of blasting on the island's water supply. However, a thorough review of the record reveals that the trial court did consider this matter and, in Paragraph 9 of its findings of fact, determined that the " * * * proper and responsible use of explosives * * * will have no adverse effect upon the quality or quantity of the well water supply on Johnson's Island * * *." A reviewing court will not disturb the factual findings of a trial court absent a showing that the court's decision was unsupported by competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Appellee's experts on geology, explosives, and seismology all agreed that the proposed blasting would not affect the island's water supply. Thus, there was competent, credible evidence to support the trial court's factual determination. Accordingly, appellant's third assignment of error is not well taken.

## IV

Appellant's final assignment of error puts forth the equitable doctrine of clean hands. Appellant argues that the broken promises of Johnson's Island, Inc. made in the initial sale of lots should accrue to appellee. Therefore, appellee should be estopped from benefitting from equitable relief. This assignment of error must fail. Appellee sought equitable relief only in the alternative by way of reformation of the 1977 injunction. Appellee's principal request was that the injunction already in place be construed to permit excavation involving blasting. The trial court in so construing the injunction as requested gave no new relief. It merely defined the meaning of an injunction already in effect. It was therefore appellant, not appellee, who invoked equity. Accordingly, the maxim "he who comes into equity must come with clean hands," *Kinner v. Lake Shore & Michigan Ry. Co.* (1904), 69 Ohio St. 339, 69 N.E. 614, at paragraph one of the syllabus, is inapplicable in this instance. Appellant's fourth assignment of error is not well taken.

On consideration whereof, the court finds substantial justice has been done the parties complaining, and the judgment of the Ottawa County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.

*Judgment affirmed.*

GLASSER, P.J., and ABOOD, J., concur.