Beatrice Hardy brought this action in the Gallia County Court of Common Pleas to rescind a land-installment contract she entered into with Earl and Shirley Miller ("Millers") and for punitive damages. The Millers counterclaimed, seeking to foreclose upon the real estate for Hardy's failure to pay amounts due under the contract and failure to maintain the property, a parcel of land with four trailers. After a jury trial, the trial court entered judgment for Hardy and rescinded the contract. The court then held a hearing to determine the equitable remedy. The court granted a judgment of $5,450.54 plus interest to Hardy.
On appeal, Hardy contends that the trial court erred by holding a hearing on the issue of damages after the jury returned a verdict in her favor. We disagree because the damage hearing was necessary since the issue of damages was not considered by the jury. She next contends that the award of repair costs to the Millers was against the manifest weight of the evidence. We disagree because competent credible evidence supports the award of repair costs. Hardy also contends that the trial court should not have allowed Earl Miller to testify at the damages hearing because he was present for the testimony during the jury trial. We disagree because a party present for the entire trial may testify. Hardy also contends that the trial court erred in denying her request for a view of the premises. We disagree because the trial court did not abuse its discretion in denying her request. Hardy next contends that the trial court erred by admitting photographs of the alleged damage to the property without actually viewing the property. We disagree because a trier of fact is not required to view the property at issue rather than an authenticated photograph of the same. Lastly, Hardy contends that the trial court erred in reducing her judgment by the amount of a water bill incurred while she had possession of the property. We disagree because the parties agreed that the water bill was Hardy's responsibility and because the bill was unusually high due to damage that occurred while Hardy possessed the property.
On cross-appeal, the Millers argue that the trial court erred in denying their motion for a directed verdict. We disagree because, after viewing the evidence in the light most favorable to Hardy, a trier of fact could not reach only one conclusion.
Accordingly, we affirm the judgment of the trial court.
 I.
The Millers bought a parcel of real estate with four trailer homes on it at a 1991 public auction. The title certificates for the trailers indicated that the Millers purchased the trailers for two hundred dollars each. The Millers insured the trailers at a value of $4,000 each. The Millers rented the trailers. Shirley Miller could not recall ever renting more than two of the trailers at one time.
In 1995, the Gallia County Health Department ("The Department") investigated a complaint about the property. The Department informed the Millers that they could not have four trailers on their property without a manufactured home park license.
In December 1996, Hardy visited the Millers' property to discuss purchasing it. Hardy claims that during her visit, she informed Shirley Miller that she would need rental income from the trailers in order to make the payments on the property. Shirley Miller allegedly responded that Hardy shouldn't have any trouble renting the four trailers. Hardy also inquired about the condition of the sewage systems. Miller pointed out the locations of the septic tanks, but referred Hardy to Earl Miller for questions about the condition of the tanks. The Millers later completed a residential property disclosure form that denied any problems with the septic systems.
Hardy purchased the property and the four trailers for $27,500. She tendered a $7,000 down payment and agreed to pay the Millers $348.11 a month until the full amount and the interest was paid.
At the time of the sale, two of the trailers were rented. Hardy began improving a third trailer for rental. Shortly thereafter, a tenant filed a complaint with The Department alleging problems with the sewer, general disrepair of the property and the lack of a manufactured home park license. The Department sent a "Notice of Violation and Order to Correct" to the Millers and Hardy. The notice alleged a nuisance because of the lack of a manufactured home park license, in violation of R.C. 3733.01, improper disposal of household sewage, in violation of Ohio Adm. Code 3701-29-02, and improper disposal of solid waste, in violation of Ohio Adm. Code 3745-27-05.
The Department advised the Millers and Hardy that they could abate the nuisance by taking three steps: (1) either applying for a manufactured home park license or removing all but two of the trailers from the lot; (2) repairing all waste water lines so that all waste water enters the sewage disposal systems; and (3) removing all solid waste to the county landfill.
After receiving the notices, Hardy asked all her tenants to vacate their trailers. Hardy stopped paying the property and mobile home taxes and insurance premiums. Sometime after the tenants vacated the trailers, vandals damaged and burglarized the trailers and broke a water pipe.
In April, 1998, Hardy filed a complaint. The Millers filed a cross-complaint seeking foreclosure and damages for Hardy's failure to maintain the property during her possession. The parties tried their cases to a jury. The Millers moved for a directed verdict at the end of Hardy's case in chief, and renewed their motion at the close of the trial. The trial court denied both motions. The jury found in favor of Hardy and the court ordered the contract rescinded. The trial court then held a hearing on the issue of remedies.
At this hearing, Diana Gauze of the Gallia County Rural Water Company ("The Water Company") testified that when Hardy took possession of the property, the Millers' account with The Water Company was paid in full. According to Gauze, Hardy incurred a $924.83 water bill that remained unpaid, and The Water Company would not turn the water on for the Millers until Hardy's bill was paid.
Hardy testified that she gave the Millers a $7,000 down payment and $6,962.20 in installment payments, and that she spent $2,923.17 on improvements while she possessed the trailers. According to Hardy, she only received a total of about $1,500 in rent. She admitted that she did not pay all of the property taxes during her possession of the property.
Shirley Miller testified that prior to Hardy's possession, she had rented two of the trailers for a total of $250 a month. Hardy had possession for twenty-one months. Shirley Miller concluded that the Millers could have collected a total of $10,500 in rent during Hardy's possession.
Earl Miller testified that he personally viewed and photographed the trailers after the trial. The court permitted the Millers to introduce these photographs as evidence of the trailer's current condition. According to Earl Miller, the trailers suffered significant damage during Hardy's possession, including (1) the removal of all electrical wiring in one of the trailers, (2) destruction of the wall paneling, (3) damage to the roof of one trailer, (4)removal of the underpinning, which protects the bottom of the trailer from damage by animals, (5) removal of carpeting, (6) damage to one toilet and removal of another, (7) cracked windows, and (8) broken and missing water and sewer pipes. Earl Miller prepared an estimate of the cost of restoring the trailers to the condition they were in when Hardy took possession. The Millers also introduced a list of the repairs necessary to return each trailer to the condition it was in when Hardy took possession. Earl Miller testified that, in his opinion, these repairs would cost $19,335. He based his opinion on his forty years of experience in repairing and maintaining trailers and other residential property.
The trial court awarded a total of $5,450.54 to Hardy. It arrived at this sum by first awarding her $13,962.20 for the down payment and installment payments and $2,923.17 for the improvements she made to the property. The court then set-off Hardy's award as follows: (1) $2,500 for lost rent, (2) $8,010 for the repair of two of the trailers and (3) $924.03 for the water bill. The trial court did not award the full amount of lost rent or repair cost because of the fraud involved. The trial court denied the Millers' request for a set-off of insurance and taxes.
Hardy appeals, asserting six "facts and grounds" on which she based her appeal. We construe these "facts and grounds" as the following assignments of error:
 I. The trial court erred by holding a hearing on the issue of damages.
 II. The award of $8010 in repair costs to the Millers was against the manifest weight of the evidence.
 III. The trial court erred in allowing Early Miller to testify at the damages hearing.
 IV. The trial court erred in denying Hardy's request that the trial court view the property and trailers.
 V. The trial court erred in admitting photographs allegedly showing damages to the property.
 VI. The trial court erred in reducing her judgment by the amount of the outstanding water bill.
The Millers assert the following assignment of error in their cross-appeal:
 The trial court erred in denying the motion for directed verdict at the conclusion of the evidence.
 II.
In their cross appeal, the Millers assert that the trial court erred by failing to grant a directed verdict in their favor because (1) Hardy failed to prove the elements of fraudulent misrepresentation and (2) the "as is" clause in the contract relieves the seller from any duty to disclose any problems with the sewer system or the necessity of a manufactured home park license.
 A.
A motion for a directed verdict presents a question of law even though, in deciding such a motion, it is necessary to review and consider the evidence. Grau v. Kleinschmidt (1987),31 Ohio St.3d 84, 90. A motion for directed verdict tests the legal sufficiency of the evidence. Eldridge v. Firestone Tire Rubber Co. (1985), 24 Ohio App.3d 94, 96. Accordingly, we must make an independent review. When considering a motion for a directed verdict, a court must construe the evidence most strongly in favor of the party against whom the motion is directed. Strother v. Hutchinson (1901), 67 Ohio St.2d 282,284. A court considering a motion for directed verdict must determine not whether one version of the facts presented is more persuasive than another; rather, the court must determine whether the trier of fact could reach only one result under the theories of law presented in the complaint. Id. Where there is substantial competent evidence favoring the nonmoving party so that reasonable minds might reach different conclusions, the motion must be denied. Ramage v. Central Ohio Emergency Serv.,Inc. (1992), 64 Ohio St.3d 97, 109.
A party seeking to prove a claim of fraudulent misrepresentation must prove a representation, material to the transaction, was made falsely, with either knowledge of its falsity or utter disregard for its truthfulness so that knowledge of its falsity may be inferred, and with intent to mislead, that was justifiably relied upon by the party, and proximately caused an injury. Burr v. Ed. of Cty. Commrs. ofStark Cty. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus; Cohen v. Lamko (1984), 10 Ohio St.3d 167.
The Millers argue that Hardy failed to establish that Shirley Miller made any fraudulent statements or that Hardy justifiably relied on any statements made by Shirley Miller.
Hardy asserted at trial that Shirley Miller knew that Hardy would not purchase the property unless she could rent the trailers, and that Shirley Miller therefore falsely represented that Hardy would have no trouble renting the four trailers. Shirley Miller testified that she never told Hardy that they had ever rented all four trailers at one time or that they had a manufactured home park license. She also denied lying or intending to mislead Hardy. Viewing all this evidence in the light most favorable to Hardy, we find substantial competent evidence upon which the trier of fact could determine that Shirley Miller made a false statement with the intent to mislead Hardy.
The Millers also allege that Hardy's reliance upon this statement was not justifiable, because she could have investigated whether she needed a manufactured home park license and because Hardy's real estate agent should have advised her to have the property inspected and contact The Department about any licensing requirements. We do not agree. The need for a manufactured home park license is not apparent from an inspection of the property. Hardy had no reason to suspect that she would need to obtain a license in order to continue the current use of the property. Shirley Miller's statements implied that Hardy would have no trouble renting the trailers and that she would only have to place a sign in the yard to rent the four trailers. Further, there was conflicting evidence about whether Hardy was actually represented by the agency that was involved in the transaction. Both Hardy's and the Millers' agents were employees of the same agency. The agency had initially represented only the Millers. Viewing this evidence in the light most favorable to Hardy, we find that a trier of fact could not reach only the result that Hardy did not justifiably rely upon Shirley Miller's statement.
 B.
The Millers also allege that the trial court should have directed a verdict in their favor because the land-installment contract provides that Hardy bought the property in an "" as is condition. They assert that the "as is" clause relieved them of any duty to disclose any problems with the sewage system and the requirement of a manufactured home park license. While this may be true, Shirley Miller made a representation that Hardy would have no trouble renting all four trailers.
An "as is" clause in a real estate contract places the risk of property defects upon the purchaser and relieves the seller of any duty to disclose. Rogers v. Hill (1998), 124 Ohio App.3d 468,471, Brewer v. Brothers (1992), 82 Ohio App.3d 140, 151;Kaye v. Buehrle (1903), 8 Ohio App.3d 381, 382-383. Such a clause in a real estate contract protects the seller from liability for any "passive non-disclosure" but does not shield the seller from an "active" fraud of commission such as a misrepresentation or fraudulent concealment. Rogers; Lance v.Bowe (1994), 98 Ohio App.3d 202, 207; Chelmsford Properties,Inc. v. Courtney, (Mar. 31, 1995), Geauga App. No. 94-G-1887, unreported. Accordingly, an "as is" clause cannot be relied upon to bar a claim for fraudulent misrepresentation. Wilson v.Zender (Jan. 30, 1991), Summit App. No. 14263, unreported.
Although the Millers had no duty to disclose, the clause did not relieve Shirley Miller of the liability that arose out of a fraudulent misrepresentation. Viewing the evidence in the light most favorable to Hardy, we find that a trier of fact could not reach only the conclusion that the Millers' were not liable because of the "as is" clause.
We find that the trial court did not err in refusing to grant the Millers' motion for a directed verdict. Therefore, we overrule the Millers' only cross-assignment of error.
 III.
Hardy did not set forth assignments of error and therefore we could dismiss her appeal pursuant to App.R. 12 and 16. However, we generally give pro se litigants wide latitude. Thus, in the interests of justice we have construed six assignments of error from her one-page brief.
 A.
In her first assignment of error, Hardy contends that the trial court should not have held a hearing on damages because the jury found in her favor. While the jury did find in Hardy's favor on whether the contract should be rescinded, the jury did not consider the remedy for the rescission. Hardy did not object at the trial to the court's jury instructions, which lacked an instruction for the jury to determine rescission damages. After a contract rescission, both parties are to be put in the position they occupied prior to the contract.Russell v. Ricart Ford, Inc. (Jan. 7, 1991), Pickaway App. No. 89CA28, unreported. Hardy was not entitled to the benefit of possession of the property without paying any compensation to the Millers. See Wilson v. Zender (Jan. 30, 1991), Summit App. No. 14263, unreported. Thus, after the jury's verdict, issues were left unresolved, making a hearing on damages necessary. We find that the court did not err in having a hearing on the issue of damages. Thus, we overrule Hardy's first assignment of error.
 B.
In her second assignment of error, Hardy contends that the reduction in her award for the cost of repairs to the trailers was against the manifest weight of the evidence because (1) she presented evidence that the trailers were worth only $200 each at the time the Millers purchased the trailers and (2) the Millers did not present any expert testimony supporting Earl Miller's estimates of the costs of repair.
A reviewing court will not reverse a judgment as being against the manifest weight of the evidence when the judgment is supported by some competent, credible evidence going to all the essential elements of the case. C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279, syllabus. The reviewing court must be guided by the presumption that the trier of fact is the best judge of a witness's credibility because the trier of fact is best able to view the witness and observe his or her demeanor, gestures and voice inflections. In reJane Doe 1 (1991), 57 Ohio St.3d 135.
While the record contains some evidence that the trailers were only worth $200 each, it also contains evidence that the trailers were insured at a value of $4,000 each. Moreover, Earl Miller testified that in his opinion, it will cost over $19,000 to return the property to its condition prior to the contract. Hardy did not object during this testimony. Earl Miller based his opinion on over forty years of experience in buying and using the items necessary to repair the trailer. He explained that he is familiar with the costs of purchasing these items and the cost of labor to install them. Earl Miller also testified that he already had purchased many of the items and had them stored as ""extras.
Earl Miller's testimony that it would cost over $19,000 to return the property to its pre-contract condition was competent credible evidence supporting the trial court's reduction of Hardy's award. The court did not err in setting off Hardy's award by the cost to restore the property to its condition prior to the contract because there was competent credible evidence to support it. Accordingly we overrule Hardy's second assignment of error.
 C.
In her third assignment of error, Hardy contends that the trial court should not have allowed Earl Miller to testify at the damages hearing because he was present for the entire jury trial. While Evid.R. 615 allows for the separation of witnesses, it does not apply to a party. Lowry v. Lowry (1988),48 Ohio App.3d 184, 189. We find that the trial court did not err in allowing Earl Miller to testify and, accordingly, we overrule Hardy's third assignment of error.
 D.
In her fourth assignment of error, Hardy contends that the trial court erred in denying her motion for the court to view the property and trailers. The allowance of a view of property or scene at issue is within the sound discretion of the trial court. State v. Lundgren (1995), 73 Ohio St.3d 474, 490. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. Franklin Cty.Sheriff's Dept v. State Emp. Relations Ed. (1992), 63 Ohio St.3d 498. There is nothing in the record to support Hardy's assertion that the trial court acted unreasonably, unconscionably, or arbitrarily in denying the jury view. At the hearing on damages, both parties presented photographs of the property and trailers. Hardy had an opportunity to cross-examine Earl Miller about his assertion that the photographs were accurate representations of the current state of the property. Accordingly, the trial court did not abuse its discretion in denying Hardy's motion for a viewing.
 E.
In her fifth assignment of error, Hardy contends that the trial court erred by failing to verify the Millers' photographs of the damage to the trailers by viewing the property. The Millers contend that they properly authenticated the photographs, and therefore the trial court properly admitted them pursuant to Evid.R. 902. For photographs that are illustrative of a witness's testimony, to be admissible, the witness must testify that the photograph "is a fair and accurate representation of the subject matter, based on that witness' personal observation." Midland Steel Prods. Co. v. Internatl.Union, et al. (1991), 61 Ohio St.3d 121, 129, citing Fisher v.State (1982), 643 S.W.2d 571. Earl Miller testified that the pictures accurately represented the condition of the trailers. This testimony properly authenticated the photographs of the trailers. Hardy did not object to the photos. Furthermore, Hardy declined to introduce evidence concerning the condition of the property or to cross-examine Earl Miller concerning his assertion that the pictures represented the current state of the property.
Because we find that the photographs were authenticated, we overrule Hardy's fifth assignment of error.
 F.
In her sixth assignment of error, Hardy contends that the trial court erred in setting off her damage award by the amount of the water bill. Gauze testified that The Water Department will not reconnect the water for the Millers until Hardy's $924.83 bill is paid. This unusually high water bill was a result of a leak, which was caused by damage to the pipes in one of the trailers while Hardy had possession. The trial court's entry states that "both parties agreed that the plaintiff [Hardy] should pay the water bill." Hardy does not dispute this statement, she simply concludes from it that the Millers should reimburse her. We do not reach the same conclusion. The trial court's entry allocates the payment of the water bill to Hardy and provides for its payment by reducing her damage award by $924.83. Further, we find that the trial court did not err in allocating the water bill to Hardy because the bill was incurred as a result of damage to the property while Hardy had possession. We overrule Hardy's sixth assignment of error.
 IV.
In sum, we overrule all of Hardy's assignments of error and the Millers' only cross-assignment of error. Accordingly, we affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment Only.
For the Court
 BY: ________(signed)____________ Roger L. Kline, Presiding Judge
NOTICE TO COUNSEL
 Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.